**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **CASE NO. 4:08CR102** |
| | ) | |
| **PLAINTIFF,** | ) | **JUDGE PETER C. ECONOMUS** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **LINNARD LAWSON,** | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| **DEFENDANT.** | ) | |

This matter is before the Court upon Defendant Linnard Lawson's ("Lawson") Motion for Judgment of Acquittal (Dkt. # 50) and Motion for New Trial (Dkt. # 51). For the reasons that follow, Lawson's Motion for Judgment of Acquittal is **DENIED in part** and **GRANTED in part** and Lawson's Motion for a New Trial is **DENIED.**

## I.  PROCEDURAL BACKGROUND

On February 27, 2008, the Grand Jury of the United States District Court for the Northern District of Ohio issued a three count Indictment charging Lawson with: (1) possession with intent to distribute a mixture or substance containing a detectable amount of cocaine base (crack), in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A); (2) being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); and (3) carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A).

On August 3, 2010, the matter proceeded to trial on all three counts of the

1

Indictment. Testimony was taken before the jury from August 3, 2010 to August 4, 2010. On August 4, 2010, the jury returned a verdict of guilty against Lawson on all three counts. The jury also found that the Government had proven beyond a reasonable doubt that an amount of cocaine base (crack) weighing at least two hundred eighty (280) grams could be attributed to Lawson. (Dkt. # 39). The verdict was accepted and ordered filed. (Dkt. # 40).

On August 27, 2010, Lawson filed his Motion for Acquittal (Dkt. # 50) and Motion for New Trial (Dkt. # 51). On September 17, 2010, the Government filed its Responses in Opposition to Lawson's Motions. (Dkt. # 52, 53).

## II. TESTIMONY AT TRIAL

The following Drug Enforcement Administration ("DEA") task force officers testified at trial: DEA Special Agent Frank Drew ("Special Agent Drew"), DEA Special Agent Francesco Vezio, DEA Special Agent Erik Kochanowski ("Special Agent Kochanowski"), Warren Police Officer Troy Walker, and St. Clair Township Police Officer Timothy Anderson (collectively, "the officers"). The Government also called DEA Forensic Chemist Timothy Anderson, East Liverpool Police Officer Patrick Wright ("Officer Wright"), and Special Agent Nicholas John Vouvalis of the Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosives. After the Government rested, counsel for Lawson recalled Special Agent Kochanowski to the stand, but declined to call any additional witnesses on Lawson's behalf.

According to testimony, on January 18, 2009, the officers arrived at 208 Needham Street ("the Needham Street residence") to serve a federal arrest warrant (Tr. at 84) [1] and a federal search warrant (Tr. at 83, 115, 131-32, 136). Upon arriving, the officers knocked on the front door of the residence and announced their presence. (Tr. at 138). Although the officers could see individuals inside, no one answered the door and as a result, the officers made entry into the home. (Tr. at 138-39).

Once inside the residence, the officers encountered Lawson and Keira Abercrombie. (Tr. at 139-40). The two individuals were mostly unclothed and were standing at the top of a staircase that led to the second floor. (Tr. at 139-40). The officers then secured the home, and while doing so, discovered a .380 automatic pistol on a shelf in the first floor living room. (Tr. at 85, 95, 120, 156, 217-18). Shortly thereafter, the officers handcuffed Lawson, read him his <u>Miranda</u> rights (Tr. at 85, 141), and began to question him (Tr. at 85, 141-42).

When the officers asked Lawson if there were any drugs, money, or weapons in the house, he replied: "well you already found the gun." (Tr. at 85). Lawson also told the officers that he had narcotics in his pants. (Tr. at 86). The officers discovered $1,090 in currency on Lawson's person, but Lawson's pants did not contain any drugs. (Tr. at 86, 88-89, 145).

According to the testimony of multiple witnesses, Lawson then directed the

---

[1] "Tr." corresponds to page numbers of a preliminary version of the trial transcript. Because these page numbers might vary from the final version, Appendix A contains all transcript pages cited in this opinion.

officers to the kitchen by body gestures, including nodding his head toward a porcelain container located near a microwave. (Tr. at 86, 116-18, 125-126, 128). Special Agent Drew recalled hearing Lawson state: "Over in the container, over by the microwave." (Tr. at 111). Inside the porcelain container were three plastic bags containing a total of 16.5 grams of crack cocaine, all contained within a fourth plastic bag. (Tr. at 110-111, 118, 149, 181, 230). Lawson then directed the officers to a box of .380 caliber semiautomatic weapon ammunition contained in a crouton bag on the kitchen counter. (Tr. at 110-11, 119, 126-27).

The officers also found approximately $6,926 in currency (Tr. at 145) and 270.6 grams of crack cocaine (Tr. at 132-33, 233) in a drop ceiling upstairs in the master bedroom. Lawson did not respond when the officers showed him the crack cocaine and asked Lawson if it belonged to him.[2] (Tr. at 184). However, when the officers asked Lawson if the bags containing the drugs would have his fingerprints on them, Lawson responded that his prints might be on the packaging. (Tr. at 145).

The officers sent for fingerprint analysis the plastic bags found in the kitchen that contained 16.5 grams of crack cocaine. (Tr. at 149). However, no identifiable prints were found on any of the bags. (Tr. at 50). Special Agent Kochanowski testified that in his experience, it was common not to be able to obtain fingerprints on plastic bags. (Tr. at 150). The larger bag of crack cocaine found in the drop ceiling was not sent for

---

2 This exchange is discussed in greater detail below.

4

fingerprint analysis because, according to Special Agent Kochanowski, the officers did not feel the need to request fingerprints based on Lawson's statement that they might find his prints on the narcotics. (Tr. at 142, 145, 149).

Officer Kochanowski testified that the packaging and quantity of the narcotics found in the Needham Street residence, in his experience, were consistent with trafficking. (Tr. at 1534). Finally, according to his testimony, Officer Wright observed Lawson's vehicle at the Needham Street residence on numerous occasions prior to January 18, 2008. (Tr. at 263).

### III. LAW AND ANALYSIS

#### A. Motion for Judgment of Acquittal

On a motion for judgment of acquittal, the Court must determine whether a reasonable jury could fairly find Lawson guilty beyond a reasonable doubt, viewing the evidence in a light most favorable to the Government. See United States v. Gorman, 807 F.2d 1303 (6th Cir. 1986). The relevant question for the Court is whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).

However, the evidence "need not unequivocally point to the defendant's guilt as long as it permits the jury to find the defendant guilty beyond a reasonable doubt." United States v. Pungitore, 910 F.2d 1084, 1129 (3rd Cir. 1990). The Court must view all the evidence and resolve all reasonable inferences in favor of the Government. Id.

United States v. Searan, 259 F.3d 434, 441 (6th Cir. 2001). Courts must take care not to invade the jury's province. See United States v. Mariani, 725 F.2d 862, 865 (2nd Cir. 1984). Moreover, a finding of insufficiency should "be confined to cases where the prosecution's failure is clear." Burks v. United States, 437 U.S. 1, 17 (1977).

### *1. Count 1*

Count 1 of the Indictment charges Lawson with possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). In order to convict Lawson of this charge, the Government must have proven beyond a reasonable doubt that Lawson: (1) knowingly, (2) possessed a controlled substance, (3) with intent to distribute it. See United States v. Jackson, 55 F.3d 1219, 1225 (6th Cir. 1995) (citing United States v. Peters, 15 F.3d 540, 544 (6th Cir. 1994)).

However, the Government need not have proven that Lawson physically possessed the narcotics to be found guilty of Count 1. "Possession may be either actual or constructive and it need not be exclusive but may be joint." United States v. Craven, 478 F.2d 1329, 1333 (6th Cir. 1973). To establish constructive possession, the evidence must show that Lawson knowingly had the power and the intention at a given time to exercise dominion and control over the crack cocaine either directly or through others. United States v. Welch, 97 F.3d 142, 150 (6th Cir. 1996). Proof of constructive possession through direct or circumstantial evidence is sufficient. Id. While mere proximity to the drugs is not sufficient, proximity combined with other evidence of the defendant's

6

involvement in a conspiracy to distribute crack cocaine will suffice to establish possession. Id. at 150-51.

Lawson contends that the Government did not produce sufficient evidence at trial to support this charge. Specifically, Lawson argues that his mere presence in the Needham Street residence where narcotics were found does not establish beyond a reasonable doubt that he was the possessor of those drugs, especially when other individuals had access to the residence.

Viewing the evidence in the light most favorable to the Government, a reasonable juror could find Lawson guilty of Count 1 beyond a reasonable doubt. In response to being asked if there were drugs in the house, Lawson knew exactly where they were and directed the officers to the narcotics in the kitchen near the microwave. Lawson also acknowledged that there might be some drugs on his person—further pointing to his having access to the drugs. In addition, when confronted with the larger amount of narcotics hidden in the upstairs drop ceiling, Lawson conceded that his fingerprints might be on the bags.

The Government also introduced evidence that Lawson's vehicle was frequently present at the Needham Street residence. This evidence, along with the fact that Lawson was mostly unclothed when the officers arrived strongly suggests that Lawson lived or stayed at the residence. All of these facts, combined with the large amount of money found on Lawson's person could easily lead a reasonable juror to conclude that Lawson

7

had constructive possession of the crack cocaine. Finally, the large quantity of narcotics and the nature of their packaging suggests that the drugs were intended for redistribution.

### *2. Count 2*

Count 2 of the Indictment charges Lawson with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). In order to convict Lawson of this charge, the Government must have proven the following elements beyond a reasonable doubt: (1) Lawson was convicted of a crime punishable by imprisonment for more than one year; (2) Lawson, following his conviction, knowingly possessed the firearm specified in the indictment; and (3) the specified firearm crossed a state line prior to the alleged possession. See United States v. Schreane, 331 F.3d 548, 560 (6th Cir. 2003).

"Presence alone near a gun . . . does not show the requisite knowledge, power, or intention to exercise control over the gun to prove constructive possession." United States v. Arnold, 486 F.3d 177, 183 (6th Cir. 2007) (citation and internal quotation marks omitted). "Other incriminating evidence must supplement a defendant's proximity to a firearm in order to tip the scale in favor of constructive possession." United States v. Campbell, 549 F.3d 364, 374 (6th Cir. 2008). However, as discussed above, the Government was not required to prove that Lawson actually possessed the weapon, but rather that Lawson knowingly had the power and the intention at a given time to exercise dominion and control over the firearm. See Welch, 97 F.3d 142 at 150.

At trial, Lawson stipulated that he had been previously convicted of a crime

8

punishable for more than one year. (Tr. at 81-82). Likewise, Lawson does not contest the Government's evidence that the .380 automatic pistol found in the Needham Street residence was manufactured in a state other than Ohio and crossed state lines. Rather, Lawson contends that the Government did not produce sufficient evidence at trial to prove that Lawson knowingly possessed the firearm described in the Indictment. Once again, Lawson argues that his mere presence in the home where the gun was located does not establish that he knowingly possessed it.

The Court finds that Lawson's statement in response to the officers' questioning: "you already found the gun," affirmatively acknowledged ownership, or at least control of the weapon. Lawson also had knowledge of the hiding spot where the ammunition specific to the gun had been concealed. Drawing all inferences in favor of the Government, the above evidence was sufficient to allow a reasonable juror to conclude that Lawson was guilty beyond a reasonable doubt of knowingly possessing the .380 caliber weapon and .380 ammunition described in the Indictment.

### *3. Count 3*

Count 3 of the Indictment states the following:

On January 18, 2008, in the Northern District of Ohio, Eastern Division, LINNARD O. LAWSON did knowingly *carry a firearm during and in relation to a drug trafficking crime* for which said defendant may be prosecuted in a court of the United States, that is to possess with intent to distribute fifty (50) grams or more of a mixture or substance containing a detectable amount of cocaine base (crack), a Schedule II narcotic drug controlled substance, in violation of Title 21, Sections 841(a)(1) and

>   (b)(1)(A), United States Code, as charged in Count 1 of this Indictment; in violation of Title 18, Section 924(c)(1)(A), United States Code, and punishable under Title 18, Section 924(c)(1)(A)(i), United States Code.

(Dkt. # 1 at 2-3) (emphasis added).

18 U.S.C. § 924(c)(1)(A) provides in pertinent part:

> [A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime . . . be sentenced to a term of imprisonment of not less than five years.

In United States v. Combs, 369 F.3d 925, 930-33 (6th Cir. 2004), the Sixth Circuit held that 18 U.S.C. § 924(c) criminalizes two separate offenses: (1) using or carrying a firearm during and in relation to a drug trafficking crime, and (2) possessing a firearm in furtherance of a drug trafficking crime. In addition, the Government is required to present different proof for each offense. Id. at 932.

In its Response to Lawson's Motion for Judgment of Acquittal, the Government concedes that "the Indictment should have specified 'possession' and not 'carry.'" (Dkt. # 52 at 5). Moreover, the Government presented no evidence at trial that Lawson *carried* a firearm during and in relation to a drug trafficking crime, and the parties submitted jury instructions relating only to the *carry* prong of 18 U.S.C. § 924(c). (Dkt. # 28 at 26-27; Dkt. # 37 at 23). Therefore, Lawson's Motion for Judgment of Acquittal is hereby **GRANTED** with respect to Count 3 alone.

10

**B. Motion for New Trial**

Rule 33 of the Federal Rules of Criminal Procedure provides that "[u]pon a defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). When presented with a Rule 33 motion, a trial court may weigh the evidence and assess the credibility of the witnesses; "it has often been said that [it] sits as a thirteenth juror." United States v. Solorio, 337 F.3d 580, 589 n.6 (6th Cir. 2003) (internal citations omitted).

Lawson contends that the following statement, made by counsel for the Government in her closing argument, was improper, and thus necessitates a new trial:

> I would submit to you, ladies and gentlemen of the jury, that if this wasn't your crack, and if this wasn't your gun, and if this wasn't your ammunition, would you not have said, "Where did that come from? Not mine?"

(Tr. at 54).

Counsel for Lawson promptly objected to the statement, and the Court gave the following instruction to the jury:

> There is an objection. Let me explain to the jury that personal beliefs of counsel is not for you to consider. You should disregard any personal beliefs of what was stated by either counsel. Although counsel may make reasonable inferences based upon the evidence, your duty is to decide this case based upon the evidence that you heard and saw in this courtroom and the instructions of law that I will give you, and nothing else. Anything else you should disregard during your deliberations.

(Tr. at 55).

Counsel for the Government then continued:

11

>Instead the defendant said, "you already found the gun." "My prints might be on this bag," directing the agents toward the crack cocaine in the canister.

(Tr. at 55).

The only evidence in the record that Lawson remained silent at any time during the officers' questioning is the following testimony of Special Agent Kochanowski on cross-examination:

>Q. The drugs were brought downstairs to Task Force Officer Wright. You asked Mr. Lawson if these were his drugs, and you said there was no response, he didn't answer?
>A. Correct.
>Q. Then the next thing you said, "Well, will your fingerprints be on the baggies?" And you wrote in your report, you testified that he said, "Well, they might be," that was his response?
>A. Correct.
>Q. And there was no further response after that, correct?
>A. Correct.

(Tr. at 184).

This line of questioning was prompted by Special Agent Kochanowski's testimony during direct examination:

>Q. Tell us what, if anything, you heard at that point.
>A. I heard some discussion about any narcotics in the house. He indicated that he might have something in his pants or in his shirt in the kitchen. There were some agents that searched those, with negative results. When the officers found the crack cocaine upstairs, they brought it down. I had a personal conversation with Mr. Lawson, and I asked him if we would find his fingerprints on the plastic bags or on the narcotics, and he indicated that we might find his fingerprints on those narcotics.

(Tr. at 142).

When presenting closing argument, a prosecutor may not inject improper or prejudicial material that deprives the defendant of his right to a fair trial. United States v. Solivan, 937 F.2d 1146, 1151 (6th Cir. 1991). The prosecutor is not merely another advocate; he or she has a duty to refrain from improper methods used to wrongfully convict in addition to his duty to use every legitimate means to bring about a just conviction. Gravley v. Mills, 87 F.3d 779, 789 (6th Cir. 1996).

In Doyle v. Ohio, 426 U.S. 610, 619, (1976), the Supreme Court held that it was a violation of the due process clause of the Fourteenth Amendment for a prosecutor to use a defendant's post-arrest silence to impeach exculpatory testimony given by him at trial. Gravley, 87 F.3d 779 at 786; see also Combs v. Coyle, 205 F.3d 269, 283 (6th Cir. 2000) (holding that the use of a defendant's *pre-arrest* silence as substantive evidence of guilt also violates the Fifth Amendment's privilege against self-incrimination). The Sixth Circuit has applied this rule to comments about a defendant's silence made by prosecutors in their closing arguments. Jaradat v. Williams, 591 F.3d 863, 867 (6th Cir. 2010).

However, not every Doyle error warrants a new trial. Prosecutorial misconduct cannot support the grant of a new trial unless it "permeated the entire atmosphere of the trial." United States v. Bond, 22 F.3d 662, 667 (6th Cir. 1994) (internal citations omitted). Additionally, an admonition to the jury by the trial court indicating that the lawyer's arguments do not constitute evidence is generally sufficient to cure any

13

improprieties in closing argument. Id. at 670; United States v. Emuegbunam, 268 F.3d 377, 406 (6th Cir. 2001).

In the instant case, Lawson contends that the prosecutor's statement was an impermissible reference to Lawson's silence at the time of his arrest. Lawson argues that the prosecutor was using Lawson's silence to persuade the jury to infer guilt. Lawson further emphasizes that counsel for the Government made the statement during rebuttal, when Lawson's attorney was not afforded a response.

However, even if Lawson's non-response to a single question asked by Officer Kochanowski can be characterized as silence, the Court promptly gave a curative instruction immediately following the prosecutor's statement, and it is presumed that a jury will follow such instructions. See United States v. Moreno, 933 F.2d 362, 368 (6th Cir. 1991). While the charge did not directly address the Doyle issue, the jury was made aware that counsels' statements were not to be considered as evidence.

In United States v. Carroll, 26 F.3d 1380 (6th Cir. 1994), the Sixth Circuit clarified the test to be used in determining whether a prosecutor committed misconduct in closing argument. First, the court considers "whether a prosecutor's remarks were improper." Id. at 1385. If the remarks were improper, the court must determine whether they were flagrant, using four factors: (1) whether the statements tended to mislead the jury or prejudice the accused, (2) whether they were isolated or extensive, (3) whether they were deliberately or accidentally placed before the jury, and (4) the overall strength

14

of the evidence against the accused.  Id.  If the prosecutor's statements were not flagrant, a new trial is only warranted if: (1) proof of the defendant's guilt is not overwhelming, and (2) defense counsel objected, and (3) the trial court failed to cure the error with an admonishment to the jury.  Id. at 1385-86.  Moreover, in the context of an alleged Doyle error, the Sixth Circuit has paid special attention to the Government's evidence of a defendant's guilt and the frequency of the prosecution's reference to a defendant's silence.  See Gravely, 87 F.3d at 789; Jaradat, 591 F.3d at 871.

Even if the prosecutor's statement could be construed as an improper reference to Lawson's silence, the statement was not flagrant.  First, it was not intended to mislead the jury or prejudice Lawson.  Rather, it appears to have been an off-the-cuff response to comments made by counsel for Lawson.  In his closing argument, Lawson's attorney repeatedly made reference to the notion that the Government's account of the events were not "substantiated."  It is clear from the record that counsel for Lawson wanted the jury to draw the inference that the police had fabricated Lawson's incriminating statements. Nothing indicates that the prosecutor's isolated remark was intended to mislead the jury or prejudice Lawson.

Second, the statement was not repetitive.  It was confined to one moment during the Government's closing argument on rebuttal.  After the jury was admonished, counsel refocused her argument on Lawson's answers and actions in response to Special Agent Kochanowski's questioning.  In other words, the prosecutor's focus shifted back to what

15

Lawson did say and do. This is not the kind of deliberately repeated mistake courts have characterized as Doyle error. See Gravely, 87 F.3d at 788 ("From the beginning of its own case, through the cross examination of the defendant, up until the culmination of its final argument, the state consistently and repeatedly sought to make impermissible references to Gravley's silence after his arrest."); Jaradat, 591 F.3d at 871 ("The prosecution's conduct in this case was repetitive and deliberate."). Lastly, as discussed above, the evidence presented at trial of Lawson's guilt was strong and weighs heavily against disturbing the jury's verdict.

Though counsel for the Government's statement was not flagrant, the Court must still determine whether a new trial is nevertheless warranted. As stated above, proof of Lawson's guilt was strong, and the Court promptly cured counsel's statement with an admonition to the jury. Because the statement was an isolated utterance that must be weighed against the strong evidence of Lawson's guilt, holding a new trial would not be in the interest of justice.

## IV. CONCLUSION

For the foregoing reasons, the Court hereby orders that Lawson's Motion for Judgment of Acquittal is **DENIED in part** and **GRANTED in part**. (Dkt. # 50). Lawson's Motion for a New Trial is **DENIED**. (Dkt. # 51).

**IT IS SO ORDERED**.

16

        **<u>s/ Peter C. Economus – October 6, 2010</u>**
        **PETER C. ECONOMUS**
        **UNITED STATES DISTRICT JUDGE**